Good morning, everyone. Welcome. Our first case for argument this morning is the United States v. Alexander. Mr. Stanton. Good morning. May it please the Court, Mr. Maurer. My name is Bill Stanton, and I represent Tyquell Alexander in this appeal of the denial of a motion to quash arrest and suppress evidence. In this appeal, we contend that there was no probable cause to seize and search Mr. Alexander. The brief facts of this case are as follows. Around one in the morning on October 10th of 2020, Mr. Alexander was standing on a sidewalk in the West Garfield neighborhood of Chicago. At that time, there were approximately 30 other people standing on the sidewalk with him. A man walked up to Mr. Alexander and handed him an L-shaped object. Alexander briefly held that object before secreting it in his waistband. Chicago police officers were monitoring that area with a police observation device or pod camera. Officers saw this exchange on camera and proceeded to that location, arriving approximately 15 to 20 minutes later. Once officers arrived on scene, Alexander turned around and shuffled along a fence line a few steps. Officers immediately approached Mr. Alexander, placed him in the handcuffs, and searched him. They recovered a gun from his front waistband area. Now, Mr. Stanton, Good morning. This is Judge Rovner. My understanding from the case is that even a very brief period of openly carrying a firearm is enough to support probable cause. To arrest a person for violating a statute that prohibits open carrying, why wasn't that the case here? Your Honor, the officers who were observing this area via the pod camera did not know who Mr. Alexander was, what his background was, whether he was able to legally possess a gun, or if he had a valid FOID or concealed carry license. The state of Illinois, and I believe the statute that you're referencing under the Concealed Carry Act, does prohibit an individual from openly carrying a gun on a sidewalk. I would submit to you that if Mr. Alexander did have a valid concealed carry license and was handed a gun on a public sidewalk, his near immediate secretion of that gun in his waistband would be appropriate under the act to amount to concealing that weapon. But it sounds as though you are conceding that even if briefly it was out in the open, invisible to others who might have been looking that way. I mean, it's changed from one hand to another, that's all. Sure, and there's ample video evidence here, both the pod camera videos as well as the officers who arrive on scene have body-worn cameras, and I do think the video evidence does show maybe four to five seconds of that gun being out in the open before it is tucked into the waistband. Is that reasonable under the Concealed Carry Act? I don't know that the act specifically addresses the transfer of a gun on a sidewalk, it's kind of an unusual situation here, but I would contend that if someone's presented a gun in public, that secreting that gun within seconds would be reasonable. What do we make of the fact that Mr. Alexander seems to have taken evasive action too as the police officers approach? And that was one of the two bases that the district court relied upon in determining that there was probable cause. I do think the video's pretty clear about this, that police officers arrive on scene and Mr. Alexander definitely turns his back to them. He doesn't take off in headlong flight, he doesn't discard any objects, but he turns his back to them and shuffles. Kind of sidles along this fence, right? Shuffles along a fence line a few steps. He also pushed against the fence, which might have made the police officers believe he was trying to escape into the house. There was a little more than just the shuffling, although I will tell you I am not particularly impressed by the evasive movements, but they were at least, I think, consistent with the officer's perception from the surveillance video that he might have engaged in illegal conduct. And that would add some slight additional support to probable cause. Your Honor, I believe that the point where he pushed against the fence wasn't a gated area or a hinged area where he could have affected some type of escape. I believe he was behind another individual at that time and pushing against the fence perhaps for support, but not to make an escape to go into a residence or some type of private property. I believe he's actually in front of that. He is at the fence and he does give it a push. Yes, I agree he is at the fence. But Your Honor, I do agree with you that the second basis for the district court's conclusion here that there was probable cause being these furtive or evasive movements, I think, is not entirely supported by the video. I don't think the brief movements that Mr. Alexander made when several police officers are approaching his group would amount to the type of evasive or furtive movements that would cause concern that someone's trying to escape or someone is presently breaking the law. So do you think that we as an appellate court should make our own conclusion about how evasive or not this may have been or do we owe some deference to the district court? So you owe deference to the district court's finding of fact and I think his determination of probable cause gets reviewed de novo. I think because there are videos in evidence here that have been made part of the record on appeal that Your Honors definitely should review that evidence and make a determination as to whether the district court's findings of fact regarding that were clearly erroneous. I submit that they were. I don't think the limited and small movements that Mr. Alexander made on the night in question would amount to something that can be deemed evasive. On the video, at least once if not twice, he does sort of pat at his waist. I was trying to figure out why he pulled his shirt up when they arrived, his polo shirt. Your Honor, when you refer to he, are you referring to Mr. Alexander? Yes. He's the one that pulled, you know, he pulled his polo shirt up and I wondered what that was. I don't think when he pulls his shirt up, he's revealing the presence of a firearm. I think the firearm was always secreted up until the point that he's subject to search. No, you're right. I didn't see the firearm at that point but, you know, I did see it, of course, go into his waistband. But you can see the few seconds of open carry, momentary open carry during the transfer of the firearm. That's what's not debatable here. I absolutely concede that the firearm is out in the open from the time that the individual who passed it to Mr. Alexander has in his hand. Mr. Alexander receives it, puts it into his waistband. So it's a technical violation of the statute against open carry? Perhaps. I would submit that a statute that mandates concealed carry or prohibits open carry would give an individual who has just taken possession of the firearm a reasonable amount of time to conceal that firearm. Is there any Illinois case that has so held? Judge, in preparation for this brief, I did not find a case, but I'm happy to look into it and file a memorandum if Your Honor would like me to. I mean, it's up to Chief Judge Sykes, but I think we can do our research. Thank you. Thank you. Mr. Mauer. Good morning, Your Honors, and may it please the court. The district court properly denied the defendant's motion to suppress. The court correctly found that by the time officers conducted any Fourth Amendment seizure of the defendant, the officers knew at least three facts directly related to this defendant that indicated he was involved in armed criminal activity. One, the defendant, in the district court's words, surreptitiously received a gun from another individual in a hand-to-hand exchange on a crowded public sidewalk. Two. Before you go into two, could we stop at one, please, Mr. Mauer? Is there any minimum period of time that an individual must openly handle or carry a firearm in order to violate the statute? It was a matter of just a few seconds in this case, and my rather limited research gave me United States versus Spain, but 11th Circuit, that was 10 to 15 seconds of carrying, or rather, yeah, carrying an untaste rifle from a dwelling to a car. And then there's one Morris is the Southern District of Illinois, which isn't binding on us, of course, but yeah, so other than that, have you found any Illinois cases? No, Your Honor. The government is unaware of any cases that define a hard and fast durational requirement one way or the other. The district court did find that Mr. Alexander held the gun exposed for five seconds is what district court found, and the district court also noted that it also was unaware of any durational requirement for the Illinois statute. So let me tell you what bothers me about this whole thing, and it's a much bigger question. It's not really argued here, but it seems that the police are operating on the assumption that if you have a gun, you've done something wrong, and this is not the world we are living in now. People are entitled to have their concealed carries if they've got the proper FOID and they've got, you know, and we don't just look out on the street and assume everybody's a felon, even let's assume that's a perfectly okay restriction. So what is it about this, other than this momentary glimpse of something that turned out to be a gun, that would make anybody think somebody was doing something wrong? Two legitimate people could exchange a gun, one from the other. Yes, Your Honor. I think the issues would be that this exchange is occurring on a public sidewalk at the time that this particular exchange occurred. Why is that suspicious though? I mean, if we live in a world where gun ownership is understood to be one of the rights that people have, and they can carry them around outside their home as well as in their home, and you know, you're familiar, I'm sure, with this huge line of cases. Why are those things that would allow the police even to wind up with tarry, reasonable suspicion, much less probable cause? Because again, Your Honor, I do think it matters that this exchange is occurring amongst a large crowd on a public sidewalk. We have the additional fact here of the shot spotter alerts that go off prior to the officers responding to the scene, which was the impetus. All right, well that might be a different factor that I can... Yes, Your Honor. So there were multiple shots fired in the vicinity, which is what caused the officers to review this police observational device camera in the first place, and then happened to observe this exchange between another individual and the defendant. Returning to my prior points, again, the defendant exposed the gun that he was handed out in the open and amongst that crowd before secreting it in his waistband, and then as the district court properly found, he tried to All of those actions were observed by officers who were watching that police observational device camera, and collectively those facts provided probable cause to believe that the defendant's gun possession was unlawful. As the district court properly found, Illinois law prohibits the carrying or possessing of firearms on public streets, and although the law exempts possessions that comply with the Firearm Concealed Carry Act, under that act, the possessor must keep his gun completely or mostly concealed from view, and during that five seconds that the defendant openly exposed his gun on the sidewalk, it was not concealed at all. But what does the mostly part mean? Does it mean that you can be walking along and have part of it poking out of your waistband, or does it mean you can have a five-second period of time that you're just transferring it from one person to another? The statute does not further define the term mostly. Here, we don't have a scenario where we have a portion of the gun exposed, maybe the magazine or the butt of the gun. It's the entirety of the gun that is exposed by the defendant for that entire five-second period. So we don't have any concealment whatsoever, let alone concealment that may or may not be mostly concealed. Another reason supporting the officer's actions was what the district court described as the district court found that the defendant took note of the officer's arrival, ducked behind another man standing against the nearby fence, and then quickly tried to move to the other side of that fence once the police arrived at the scene. That's all good for a Terry stop, but we're, I think, operating under a probable cause standard here. I mean, I know you've argued this in the alternative. Yes, Your Honor. The district court did apply a probable cause standard here. I do think the evasive maneuvers contribute to a probable cause assessment. Certainly, then, in and of themselves, don't do as much to provide you probable cause as they might under a reasonable suspicion standard. But here, when you pair those evasive behaviors with the open gun possession, which the district court found both of those facts to be present here. What crime does the furtive movement exhibited by the defendant point to? It would be, it could be the open gun possession that he knew that he had openly possessed this gun on a public sidewalk. It could be for another crime, such as being a felon in possession. And again, the district court ultimately did not rely upon any of those suspicions. It relied on a probable cause assessment of an arrest for exposing this gun on a public sidewalk. But the furtive evasive behavior could drive to any number of illegal activity, to include the illegal activity that the district court found here. I must tell you that if that were the only issue, the furtive whatever, I would not be with you on that. The man took one at the most, maybe two steps to the left. And then slightly, you know, he didn't use the full force of his body against that fence. He just kind of went against the fence. I am not, as I said, particularly impressed by those movements. Yes, Your Honor. And in a world where all the officers were relying upon were the evasive behaviors by the defendant, and they just happened upon this scene without any knowledge of any firearms whatsoever, the government very likely would agree with you under that hypothetical. But here, where they have the shot spotter alerts, the hand-to-hand gun exchange, the exposure of the firearm, the evasive behavior is just an added layer building upon that probable cause analysis that had been ongoing before they arrived at the scene. So accordingly, pending any further questions from the court, the government would respectfully request that you affirm the district court's judgment. Thank you. Thank you. Mr. Stanton. The council mentioned a couple times these spot shotter alerts, and I don't believe the district court relied on that in his decision. I would point out that the shot spotter alerts were not on the 4400 block of West Congress where Mr. Alexander was standing with that group of people, but they were on other blocks in that West Garfield neighborhood. So to add that into the analysis here I think is a little misleading because the registered shots that the Chicago Police Department had indicated from those machines or from those devices were not where Mr. Alexander was. I do think that the Chicago Police were operating on the assumption here that someone handing someone else a gun in that neighborhood, there must be something doing wrong or committing an illegal act. I don't think. Well, that may be true as a subjective matter, but this is an objective standard. Absolutely. An open transfer of a firearm on the public streets is unlawful under Illinois law. So even if the violation is hyper technical, it's still a violation. Seconds long I think would be a reasonable transfer. And I'm sorry for Hyatt County, but you know, and maybe that wasn't the intent of the open carry prohibition or the purpose of it. It was aimed at more serious conduct than just transferring a gun one person to the other, but it is a technical violation. If there's no other questions, thank you for your time. All right. Thank you. Our thanks to both counsel. The case is taken under advisement.